1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

| | | |
|---|---|---|
| ANGELINA GOMEZ, | ) | 1:10-cv-01993-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

18

19

## BACKGROUND

20

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21 "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB")

22 and supplemental security income ("SSI") pursuant to Title II and XVI of the Social Security Act

23 (the "Act"), respectively. 42 U.S.C. §§ 405(g); 1383(c). The matter is currently before the Court

24 on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

25 Oberto, United States Magistrate Judge.[1]

26

27

28

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.)

1

2 **FACTUAL BACKGROUND**

3        Plaintiff was born on January 23, 1965, has completed a high school equivalency certificate,

4 attended some vocational business college classes, and has formerly worked as an administrative

5 assistant. (Administrative Record ("AR") 16, 23.) On December 12, 2006, Plaintiff protectively

6 filed an application for DIB, and on December 29, 2006, protectively filed an application for SSI.

7 In both applications, Plaintiff alleged her disability arose on January 13, 2006, due to fibromyalgia,

8 tendinitis, arthritis, and inflamation. (AR 9, 129.)

9 **A.    Relevant Medical Evidence**

10        On November 15, 2006, rheumatologist Kenneth Hsu, M.D., examined Plaintiff and referred

11 her for x-rays of her hands. (AR 241-42.) The radiological reports showed findings consistent with

12 rheumatoid arthritis in both hands, but showed "no appreciable erosive or productive changes" in

13 either hand. (AR 241-42.) Dr. Hsu diagnosed Plaintiff with fibromyalgia and arthritis.

14        On February 12, 2007, Dr. Hsu completed a medical source statement for social security as

15 Plaintiff's treating physician since November 2006. (AR 225-27.) He opined that Plaintiff could lift

16 or carry less than ten pounds occasionally; carry no weight frequently; stand or walk less than two

17 hours in an eight-hour workday; sit for less than one hour in a workday; and had some non-exertional

18 limitations resulting from her fibromyalgia. (AR 225-27.)

19        On May 26, 2007, Plaintiff underwent a comprehensive orthopedic evaluation by Doojin

20 Kim, M.D. (AR 250.) Plaintiff reported that she began experiencing joint pain at the end of 2005

21 in her wrists, elbows, and knees. (AR 250.) She described the pain as aching that was worse in the

22 morning and during the cold weather. (AR 250.) Dr. Kim made general findings, including that

23 Plaintiff had "enlargement of the first metacarpophalangeal joint on the right, but there was no

24 effusion and no pain with palpation." (AR 252-53.) Plaintiff's motor strength was noted to be "5/5

25 and equal throughout." (AR 253.) Dr. Kim diagnosed Plaintiff with "probable rheumatoid arthritis."

26 (AR 253.) Dr. Kim explained that the diagnosis of rheumatoid arthritis is based on a blood test, but

27 that such a test was not available to Dr. Kim "at this time." (AR 253.) Dr. Kim determined that

28 Plaintiff could be expected to sit for six hours in an eight-hour workday; lift or carry ten pounds

frequently and ten pounds occasionally given the probable rheumatoid arthritis; and Plaintiff should "avoid frequent fine fingering and feeling given the probability of rheumatoid arthritis." (AR 253.) He also reported that Plaintiff had no postural, visual, communicative, or workplace environmental limitations. (AR 253.)

On July 6, 2007, state agency medical consultant L. N. Yates, M.D., completed a physical residual functional capacity assessment ("RFC") form.[2] (AR 255-59.) Dr. Yates opined that Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry ten pounds; stand and walk at least two hours in an eight-hour workday; sit approximately six hours in an eight-hour workday; frequently stoop; occasionally climb, kneel, and crawl; but could never balance or crouch. (AR 256-57.)

On September 8, 2007, Plaintiff underwent a comprehensive psychiatric evaluation administered by psychiatrist Ina Shalts, M.D. (AR 260-63.) Plaintiff reported that her chief complaint was her fibromyalgia, arthritis, and depression. (AR 260.) Dr. Shalts reported that Plaintiff's speech was coherent and goal directed, but fast; there was no loosening of association or flight of ideas; she had no suicidal or homicidal ideation; her mood was depressed, anxious, and tearful; she was oriented to time, day, month, city, and person; she was unable to recall 3/3 objects in three and five minutes, but she was able to recite the names of recent Presidents; she was able to answer simple geography questions and perform serial 7's; and she was able to interpret proverbs and knew the differences and similarities between two objects. (AR 262.) Dr. Shalts assigned a Global Assessment of Functioning score of 50. (AR 262.) Dr. Shalts indicated that Plaintiff's depression could improve with treatment, but she was "suffering from chronic pain." (AR 263.) Dr. Shalts explained that Plaintiff's prognosis was dependent on her medical condition, and noted that Plaintiff had involuntary movements in her extremities, and she made facial grimaces. (AR 263.) Dr. Shalts recommended a neurological evaluation. (AR 263.)

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC is for the ALJ to assess, and physicians' use of the RFC forms assist the ALJ in determining the ultimate RFC for the claimant.

In terms of functional limitations, Dr. Shalts indicated that Plaintiff had the ability to understand, carry out, and remember simple instructions; she would have difficulty with supervisors and coworkers, as well as the public; she would have some difficulty with the usual work situation and dealing with a routine work setting due to her chronic pain and depression; and she was able to manage her own funds.  (AR 263.)

On October 1, 2007, Craig A. Smith, M.D., completed a mental RFC assessment form.  (AR 264-66.)  In areas of understanding and memory, Dr. Smith determined that Plaintiff had no more than moderate limitations; in the area of sustained concentration and pace, Plaintiff was no more than moderately limited; in all areas of social interaction, Plaintiff was found not significantly limited; and in all areas of adaptation, Plaintiff was at most moderately limited.  (AR 264-65.)  Dr. Smith concluded that Plaintiff is able to understand, remember, and carry out one- and two-step simple commands on an extended basis and relate appropriately.  (AR 266.)

On June 27, 2008, state agency consultative examiner, Lavanya Bobba, M.D., reviewed Plaintiff's medical records and confirmed the findings of Dr. Yates.  (AR 293.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 51-67, 69-76, 78-79.)

**1.    Plaintiff's Testimony**

On June 22, 2009, ALJ Michael J. Kopicki held a hearing where Plaintiff testified with the assistance of counsel.  (AR 19-50.)  According to Plaintiff, she stopped working because she was experiencing "pain everywhere" accompanied by back spasms.  (AR 24.)  Plaintiff explained she had pain in her wrists, hands, knees, and neck, and that she had been diagnosed with rheumatoid arthritis.  (AR 25-26.)  Plaintiff previously suffered a fracture in her right foot.  (AR 27.)  Plaintiff experienced inflammation in her knees every day that required her to elevate her feet, and she experienced spasms in her hips and her back due to a fall.  (AR 28-29.)  Plaintiff had arthritis in her hands and in the morning she could "barely close them," and she also experienced numbness and swelling.  (AR 29-30.)  Plaintiff described her pain as worst in her knees, foot, wrist, neck, and back, and categorized

her pain as a nine out of scale from one to ten, ten being "pass out pain." (AR 31.) She testified that she could not perform any housework; the heaviest item she could lift was a pencil or a pen; she could stand for less than five minutes; she could sit for only 15 minutes; bending forward at the waist was uncomfortable in her back and hips; she could not kneel, stoop, or squat to the ground without pain; and she could not sleep through the night. (AR 33-34.)

As to her emotional and mental condition, Plaintiff testified that she forgot many things, she was not suicidal, but she had crying spells. (AR 36.) She also stated she experienced anxiety and panic attacks. (AR 36.)

**2.     Vocational Expert's Testimony**

A vocational expert ("VE") testified that Plaintiff's past relevant work as an administrative assistant was classified as sedentary and skilled; however, it was actually performed at a light level of exertion. (AR 45.) The VE also provided responses to hypothetical questions posed by the ALJ. (AR 45-48.) In the first hypothetical, the ALJ asked that the VE consider a person of the same age and with the same education and past relevant work as Plaintiff who retains the ability to lift and carry 20 pounds occasionally and ten pounds frequently; stand or walk at least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and should only occasionally climb, stoop, or crouch. (AR 45.) The VE testified that such a hypothetical person could perform Plaintiff's past relevant work.

The ALJ then asked the VE to consider a hypothetical person with the limitations noted above, with the added limitations for simple, routine work activities involving the ability to carry out simple instructions, adapt to a simple work environment and use judgment accordingly, but have only occasional public contact. (AR 46.) Given these additional limitations, the VE testified that such a person could not perform Plaintiff's past work. There was work, however, that could be performed at the sedentary level of exertion in the categories of assembler, nut sorter, and almond blancher. (AR 45-46.) If the restriction on public contact was lifted, there would also be additional jobs that could be performed in the categories of call-out operator and order clerk. (AR 46.) The

1  VE also clarified that all the job categories required frequent fingering, with the exception of call-out

2  operator.  (AR 46-47.)

3      The ALJ then asked the VE to consider a hypothetical person of the same age as Plaintiff

4  with the same education and work history who could lift and carry less than ten pounds; stand or

5  walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday;

6  but was unable to climb, stoop, kneel, crouch, or crawl.  The VE testified that such a hypothetical

7  person could not perform any past relevant work or any other work.  (AR 47.)

8      The ALJ asked the VE to consider a hypothetical based on Plaintiff's testimony supposing

9  a hypothetical person of Plaintiff's age and with the same education and work history, but who could

10  not lift more than two pounds, could walk less than a block, stand less than five minutes, sit about

11  fifteen minutes, and is unable to effectively bend at the waist and needs to elevate the legs.  The VE

12  testified that such a group of limitations was not compatible with Plaintiff's past work or any other

13  work.  (AR 48.)

14      Plaintiff's representative posed a hypothetical to the VE that contained the same physical

15  restrictions as the ALJ's first two hypotheticals, but with a limitation for simple repetitive tasks, no

16  frequent fingering, and an added limitation for moderate problems with the ability to maintain

17  regular attendance and ability to complete a workweek.  (AR 48.)  The VE testified that, given these

18  limitations, such a hypothetical person could perform no work.  (AR 48.)

19      **3.**    **The ALJ's Decision**

20      On September 30, 2009, the ALJ issued a decision, finding Plaintiff not disabled since

21  January 13, 2006.  (AR 8-14.)  Specifically, the ALJ found that Plaintiff (1) had not engaged in

22  substantial gainful activity since January 13, 2006, the alleged onset date of disability; (2) has severe

23  impairments that include rheumatoid arthritis, obesity, depression, history of toe fracture with sinus

24  tarsi syndrome, mild degenerative joint disease of the left knee, and fibromyalgia; (3) does not have

25  an impairment or combination of impairments that meets or equals one of the impairments set forth

26  in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is unable to perform her relevant past work; but

27  (5) can perform jobs that exist in significant numbers in the national economy.  (AR 8-14.)  Plaintiff

28  sought review of this decision before the Appeals Council.  On September 2, 2010, the Appeals

Council denied review.  (AR 1-5.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

## C.    Plaintiff's Contentions on Appeal

On October 22, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff asserts that the ALJ failed to appropriately consider the medical evidence.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are

demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**A.    The ALJ Properly Considered Dr. Shalts' Opinion**

**1.    The ALJ's Rejection of Social Limitation Was Specific and Legitimate**

Plaintiff asserts that "[t]here is some question as to whether Dr. Shalts's opinions are contradicted by Craig A. Smith, M.D. the state agency psychiatrist." (Doc. 12, 7:11:12.) Plaintiff argues that, to the extent Drs. Shalt and Smith's opinions are consistent, the ALJ was required to state clear and convincing reasons to reject Dr. Shalts' opinion. The Commissioner contends that Dr. Shalt's opinion was "clearly contradicted by Dr. Smith's findings as Dr. Smith concluded that Plaintiff could perform simple, one and two step tasks and relate appropriately." (Doc. 15, 7:26-28.)

The opinions of Dr. Shalts and Dr. Smith are not entirely consistent.  For example, while Dr. Shalts opined that Plaintiff would have some difficulty with supervisors or co-workers, as well as the public, Dr. Smith found Plaintiff not significantly limited in her ability to interact with the general public or in her ability to get along with coworkers or peers without distracting them. (*Compare* AR 263 *with* AR 265.)  Thus, as it related to the physicians' opinions as to Plaintiff's social functioning, they did not appear to agree on the extent of Plaintiff's limitations.  The ALJ was required to state specific and legitimate reasons for discounting Dr. Shalts' opinion in this regard. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

Plaintiff asserts that, regardless of any contradiction between the opinions of Dr. Smith and Dr. Shalt, the ALJ's rejection of Dr. Shalts' opinion as to Plaintiff's social limitations improperly lacked specificity.  The Commissioner contends that the ALJ's dismissal of Dr. Shalts' opinion was proper because an ALJ is entitled to reject a doctor's opinion that is inadequately supported by medical findings or is conclusory, which was the basis of the ALJ's rejection here.  (Doc. 15, 7:11-23.)

Dr. Shalts opined that Plaintiff can understand, remember, and carry out simple instructions, but that Plaintiff may have some difficulty relating with supervisors, co-workers, and the general public, and she may experience difficulty dealing with the usual work situation and routine work setting due to her chronic pain and depression.  (AR 263.)  The ALJ gave "some weight" to this opinion, but noted that it was "based in part on chronic pain[,] which is outside the purview of the psychological examination" and further reasoned that "the basis for the social limitations given by Dr. Shalts is otherwise not supported by the longitudinal record."  (AR 15.)

Plaintiff argues that discrediting Dr. Shalts' opinion as to social limitations on the ground that there is a lack of support in the longitudinal records is not sufficiently specific.  Nevertheless, other than Dr. Shalts' ultimate conclusion, the medical records do not contain findings that indicate Plaintiff is limited in her social functioning.  A lack of support in the record for an imposed limitation is a proper basis to reject a physician's opinion.  *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given).  To the extent that Plaintiff relies on *Embrey v. Bowen*, 849 F.2d 418 (9th Cir.l 988), for

the proposition that the ALJ must discuss the evidence supporting a conclusion with sufficient specificity, *Embrey* is distinguishable.  In *Embrey*, the ALJ concluded that the physicians' opinions of total disability were not supported "by sufficient objective findings and were contrary to the preponderant conclusions mandated by those objective findings." *Id*. at 421.  The ALJ's reasoning indicated that there were objective factors to discuss, indeed, the ALJ listed certain findings, but failed to provide any relevant discussion how the objective findings were weighed. *Id.*

This is distinct from a situation where, as here, the ALJ points to an absence of evidence, as opposed to referring to unspecified evidence that "preponderates" a different conclusion than that reached by the doctor.  In other words, it is essentially impossible to discuss specifics that do not exist. *Cf. United States v. Newman*, 144 F.3d 531, 543 n. 13 (7th Cir. 1998) (noting "the difficulty in proving a negative proposition").  The ALJ could have expanded on the discussion of the longitudinal record to point out, for example, that there was no evidence that Plaintiff demonstrated inappropriate demeanor or presented in a particular manner that would be offensive or incompatible with social mores.  Nonetheless, the Court cannot conclude that it is the ALJ's duty to imagine findings, among the world of possible findings that could theoretically have been made to support Dr. Shalts' conclusion, and then point to places in the record where those findings were *not* made.

Finally, Plaintiff points to no findings related to her social functioning that the ALJ overlooked or failed to weigh, and a review of the record indicates that the only evidence that potentially relates to an impairment in Plaintiff's ability to socially function was her own statement to Dr. Shalts that she had no friends.   The ALJ cannot be faulted for failing to specifically discuss evidence that does not exist.  Under these circumstances, it is sufficient for the ALJ to state that the longitudinal record does not provide support for the limitation imposed; frankly, even Dr. Shalts' report did not provide adequate findings to support the limitation imposed, particular in light of the ALJ's finding as to Plaintiff's credibility.  The lack of any evidence supporting a social limitation is reflected in the state agency physician's opinion, finding that Plaintiff was not significantly limited in any aspect of social interaction.  (*See* AR 265.)

1

2

### 2. The ALJ Properly Gave Less Weight to Dr. Shalts' Opinion Regarding Plaintiff's Chronic Pain

3      Plaintiff also argues that Dr. Shalts was competent to render an opinion that Plaintiff's

4 chronic pain affects her ability to perform tasks in a usual work situation and the ALJ's rejection on

5 the basis that Dr. Shalts was not competent to do so was improper. The ALJ, however, did not reject

6 Dr. Shalts' opinion on that ground. Rather, Dr. Shalts' opinion as to Plaintiff's ability to perform

7 tasks in a usual work situation and deal with a routine work setting was somewhat discounted as

8 predicated on medical pain that was outside the scope of Dr. Shalts' examination of Plaintiff. (AR

9 15 ("The opinion has been given some weight, but it is based in part on chronic pain which is outside

10 the purview of the psychological examination").) Plaintiff is correct that Dr. Shalts, as a psychiatrist

11 and medical doctor, is theoretically *competent* to opine how Plaintiff's chronic medical pain impacted

12 her functional abilities had her examination of Plaintiff evidenced findings or expressed her objective

13 professional opinion of Plaintiff's chronic pain. Dr. Shalts' examination, however, did not include

14 a physical/medical-condition component; rather, the examination focused on Plaintiff's mental and/or

15 emotional condition. (*See* AR 260-63.) While indicating that she reviewed Plaintiff's records, Dr.

16 Shalts did not independently evaluate any of the medical evidence, provide any professional opinion

17 regarding Plaintiff's diagnoses of fibromyalgia or rheumatoid arthritis upon which Plaintiff's

18 complaints of pain were apparently based, or discuss the *severity* of those conditions and the

19 resulting pain that Plaintiff may experience. (*See* AR 260-63.) Rather, the record indicates that Dr.

20 Shalts' consideration of Plaintiff's chronic pain was made only on the basis of Plaintiff's subjective

21 statements about the severity of her pain – which were discredited by the ALJ. In this regard, it was

22 proper for the ALJ to reject Dr. Shalts' opinion with respect to Plaintiff's chronic pain as being

23 outside the purview of the examination that Dr. Shalts conducted. While Dr. Shalts, as a psychiatrist

24 with a medical license, *could* have conducted a medical evaluation of Plaintiff's physical conditions

25 and assessed the severity of pain that could be expected to arise out of those conditions in light of

26 Plaintiff's expressions of pain, Dr. Shalts did not do so. The ALJ did not err in this regard.[3]

27

28      [3] This was a legally sufficient reason to give less weight to Dr. Shalts' opinion under either the clear and convincing standard or the specific and legitimate standard.

11

1    To the extent that Dr. Shalts and Dr. Smith were generally in agreement that Plaintiff may

2  experience some difficulty as it relates to sustained concentration and pace[4] (*see* AR 263, 265), the

3  ALJ's RFC limitation for simple, routine tasks incorporated this limitation, and in that regard, the

4  opinions were essentially adopted by the ALJ. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174

5  (9th Cir. 2008) (An RFC assessment that is "consistent with the restrictions identified in the medical

6  testimony" adequately sets out restrictions that are related to concentration, persistence and pace).

7    Finally, while Plaintiff asserts that the VE testified that moderate limitations in the ability

8  to complete a normal workday or workweek from psychologically based symptoms, maintain

9  attendance, and respond appropriately to changes in a work setting would render a hypothetical

10  person disabled, as Dr. Smith's opinion indicated, (Doc. 12, 7:21-22), this is not entirely accurate.

11  At the hearing, Plaintiff's representative posed a hypothetical to the VE that involved a person

12  limited to simple repetitive tasks with no frequent fingering in addition to moderate limitations in

13  the ability to maintain regular attendance and complete a workweek. (AR 48.) The VE testified that

14  there would be no jobs that this person could perform; however, the fingering limitation imposed in

15  this hypothetical was not adopted by the ALJ. It is not accurate to state that a person who *could*

16  perform frequent fingering, but had a moderate ability to maintain regular attendance and complete

17  a normal workweek, would be unable to perform any work as this is not the precise testimony the

18  VE provided. (*See* AR 46-48.)

19    Moreover, as indicated by the Ninth Circuit in *Stubbs-Danielson*, deficiencies in

20  concentration and pace are adequately captured by an RFC restriction for simple, routine, repetitive

21  work, which was a limitation posed to the VE in this case, and the VE identified work that Plaintiff

22  could perform given this limitation. *Id.* at 1174-75. It is also noteworthy that, although Dr. Smith

23  opined Plaintiff had moderate limitations in sustained concentration and persistence, he nonetheless

24  concluded that Plaintiff could remember and understand one- and two-step simple commands on an

25  extended basis and relate appropriately. (AR 266.) Given this conclusion by Dr. Smith, the

26  hypothetical posed to the VE by Plaintiff's counsel with respect to the moderate limitations in

27

28    [4] The ALJ did give "some weight" to the opinion of Dr. Shalts. To the extent that Dr. Shalts provided work limitations based in part on chronic pain that exceeded the limitations opined by Dr. Smith, they were rejected.

concentration, persistence, and pace did not adequately account for the totality of Dr. Smith's opinion.  The ALJ's restriction for simple, repetitive work most closely captured the limitations as opined by Dr. Smith.  The ALJ did not err in his treatment of Dr. Smith's opinion or the formulation of the RFC.

**B.      The ALJ Properly Weighed the Opinion of Dr. Kim**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to reject Dr. Kim's opinion that Plaintiff was limited in terms of dexterity to *less* than occasional fingering, predicated on her diagnosis of rheumatoid arthritis.

Dr. Kim opined that Plaintiff should "avoid activities that required frequent fine fingering and feeling." (AR 253.)  The ALJ expressly considered this opinion, but determined it was entitled to less weight because Dr. Kim's examination findings were "largely normal" and did not support the extent of the fingering limitation. (AR 14.)  Specifically, the ALJ reasoned that, on examination, Dr. Kim reported that Plaintiff's right hand exhibited a non-painful, non-swollen enlarged first metacarpophalangeal joint, and that Plaintiff's hand had full flexion/extension and finger and thumb movements within normal limits bilaterally. (AR 14.)  The ALJ concluded that, given Dr. Kim's finding that Plaintiff did have enlargement of the first metacarpophalangeal joint on the right hand, a limitation from *continuous* fingering was reasonable, but a preclusion from frequent fingering was not warranted in view of the fact that the right hand was not swollen or painful on palpation. (AR 14, *see* AR 252-53.)

Moreover, in considering the extent of Plaintiff's fingering limitation, the ALJ noted that Plaintiff was seronegative[5] and her sedimentation rate was not elevated, which was specifically reported by the state agency physician, Dr. Yates, who reviewed Plaintiff's records.[6]  Dr. Yates noted

---

[5] Seronegative refers to an absence of an RF antibody on testing. *See Dorland's Illustrated Medical Dictionary* 1723 (31st ed. 2007).

[6] The National Institute of Health provides the following discussion of the most common laboratory tests used to diagnose rheumatoid arthritis:

Rheumatoid factor (RF): Rheumatoid factor is an antibody that is present eventually in the blood of most people with rheumatoid arthritis.  (An antibody is a special protein made by the immune system that normally helps fight foreign substances in the body.)  Not all people with rheumatoid arthritis test positive for rheumatoid factor, and some people test positive for rheumatoid factor, yet never develop

that these findings, along with Plaintiff's hand x-rays, were suggestive of less severe rheumatoid arthritis, or "early rheumatoid arthritis," and the ALJ properly considered this evidence and found that it tended to weigh against the *extent* of Dr. Kim's fingering limitation. (*See* AR 16, 259.)

Plaintiff asserts that the ALJ's determination that Dr. Kim's examination findings were essentially mild, particularly as they related to the finding that the first metacarpophalangeal joint on Plaintiff's right hand had no effusion, was not painful on palpation, and the hand had full extension and flexion, was an attempt to substitute the ALJ's lay opinion for that of the physician's. However, consideration of whether examination findings adequately support the physician's conclusion is part of the ALJ's role in assessing the medical evidence. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Moreover, the ALJ's determination in this regard was supported by Dr. Yates's report that noted that Plaintiff's hand x-rays essentially showed an "early rheumatoid arthritis," as well as the fact that Plaintiff did not have an elevated "sed rate." (AR 259.) Essentially, Dr. Kim and Dr. Yates presented two conflicting opinions regarding the extent of Plaintiff's fingering limitations; the ALJ provided specific and legitimate reasons based on substantial evidence to ascribed less weight to the limitation assessed by Dr. Kim. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for

the disease. Rheumatoid factor also can be positive in some other diseases; however, a positive RF in a person who has symptoms consistent with those of rheumatoid arthritis can be useful in confirming a diagnosis. Furthermore, high levels of rheumatoid factor are associated with more severe rheumatoid arthritis.

Anti-CCP antibodies: This blood test detects antibodies to cyclic citullinated peptide (Anti-CCP). This test is positive in most people with rheumatoid arthritis and can even be positive years before rheumatoid arthritis symptoms develop. When used with the RF, this test's results are very useful in confirming a rheumatoid arthritis diagnosis.

Others: Other common laboratory tests include a white blood cell count, a blood test for anemia, which is common in rheumatoid arthritis, the erythrocyte sedimentation rate (often called the sed rate), which measures inflammation in the body; and C-reactive protein, another common test for inflammation that is useful both in making a diagnosis and monitoring disease activity and response to anti-inflammatory therapy.

*See* National Institute of Health, at http://www.niams.nih.gov/health_info/rheumatic_disease/#ra_9.

1  resolving ambiguities and conflicts in the medical evidence).  The ALJ's consideration of Dr. Kim's

2  opinion was proper and supported by substantial evidence.[7]

3                                    **CONCLUSION**

4          After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the

5  record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as

6  a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal

7  from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court

8  is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social

9  Security, and against Plaintiff ANGELINA GOMEZ.

10

11  IT IS SO ORDERED.

12  **Dated:    March 19, 2012             /s/ Sheila K. Oberto            **
                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27          [7] Plaintiff argues that the ALJ failed to give specific and legitimate reasons fore rejecting Dr. Kim's opinions
     as to Plaintiff's ability to lift and carry, but concedes that any such error was not prejudicial.  The Court finds that the
     lifting limitations were adequate rejected based upon the ALJ's discussion of the mild clinical findings and the "early"
28   state of Plaintiff's rheumatoid arthritis.  In any event, Plaintiff has conceded any alleged error was harmless.  (Doc. 12,
     10:23-25.)